In re. Shayman. Michael S. Cheekian, counsel for appellant Thomas John Shayman. Moses S. Bardavid, counsel for appellee Laila Akina. I'll ask Mr. Cheekian if you would like to reserve time. Five minutes? Certainly. When you get situated, you may proceed. Good morning to the panel and welcome to beautiful Pasadena. I'm Michael Cheekian, counsel for the appellant, defendant, debtor, Mr. Shayman, in this action. And here we're considering and we're appealing the bankruptcy court's ruling on plaintiff's summary judgment motion against the defendant. I'm not going to belabor the issues that we briefed. I just mainly want to make sure the panel understands the big picture here. I was minding my own business, trying to do my best, defending this Section 523 non-dischargeability action, defending the summary judgment motion, which I thought our opposition raised a lot of triable issues of fact. And frankly, I think that the court's ruling against the allegations in the state court cross-complaint of the defendant as true without any basis. And there's an improper application of issue preclusion in the judge's ruling. I also think that it awards damages not requested by the court. And there's an extreme dichotomy of the court's ruling in the summary judgment motion versus its prior reasoning in denying the defendant's complaint. And I'm referring to a tentative ruling of the court, which became the final ruling of the court in the excerpts of record number six at page 65, starting at line 22. The court comments on the state court ruling as follows, stating, the judgment is extremely vague. It is basically a series of yes or no questions that were given to a jury to answer. These questions, while adequate for the purposes they served in state court, were not designed with having to determine dischargeability in a bankruptcy proceeding. As such, the questions are deficient for purposes of a non-dischargeability action. The judgment does not discuss fraud. In fact, it does not mention what the causes of the damages appropriately. Okay, counsel. You say it doesn't mention fraud. But going through and looking at the jury's answers to the questions which we have before us, you know, in 11 through 28 of those, there's several decisions were made. Do we really need to say that this verdict was for fraud if, in those questions, all of the elements of fraud were dealt with? I mean, that's a good question, Your Honor. The problem with the judgment, and I'm looking at excerpt of record number 10, the amended judgment starting at page 226, is that it's too vague, as the court noted in its decision on the motion to dismiss. It's too vague as to what, though? Because the questions asked and answer aren't vague. Aren't we bound by that? Not if it doesn't specify what the fraud relates to. But it's not even that there was a promise made, and they found there was a promise made. Isn't that locked in then on issue preclusion? But what promise, Your Honor? What promise? If you look at our opposition to the judgment, we list... This is a long, long relationship between my client and the plaintiff. Not only did they have a personal relationship, they had a long standing professional relationship, spanning years and years. So if you look starting at page 560 of excerpt of record 26, which is our opposition to the summary judgment motion, we list a whole litany of transactions and agreements and funding of properties, mainly by my client, supported by his declaration, which follows this opposition, supported by documents. And then we have the very brief jury finding in state court. Let's go through. Which we don't know what... Maybe brief, but in some ways they're relatively precise. Going through 25 through 30, dealing with the fraud. I mean, we have the fiduciary duty, you know, we have A2 and A4 here. But with respect to the fraud claim, 25 is, did Shaman intend to perform the promise? No. Then 26, did Shaman intend Aquino to rely on the promise? Yes. Did Aquino reasonably rely on the promise? Yes. Did Shaman perform the promised act? No. Was Aquino's reliance on Shaman's promise a substantial factor in causing harm to Aquino? Yes. And then 30, what are Aquino's damages? And then the damages were determined for that amount. So don't we have a precise... I mean, tell me, counsel, for the elements of fraud in California, what are we missing there? What element are we missing? The facts to which this fraud conclusion relates, because there's so many facts here. But we have to decide whether it was actually litigated and was it decided. And, you know, there was, what, a four-day trial, it was actually, there was litigation, and then it was decided. Agreed. Agreed. That's one of my major points, is that we don't have any trial transcripts. We don't know what the testimony was, who testified, what were the exhibits. We don't know. It's not in the record. And so this is too vague. And Judge Teig, in the bankruptcy court at an earlier stage, agreed. And then, if you look at Judge Teig's ruling, she mainly, on the summary judgment, again, a tentative ruling which was later the ruling of the court, she mainly relies on exhibits B and C. What are exhibits B and C? Exhibit B is the judgment we're talking about. Exhibit C is the cross-complaint. Allegations by the plaintiff. She's relying, in large part, in her ruling, on exhibit C. Isn't that relevant to the determination that the issues were actually litigated, that part of it is, that they were actually raised? I'm not saying it's everything that you have to show, but isn't it relevant? Isn't it part of it? I think, and again, this is just for the record, this is Excerpts of Record 9. Exhibit C, starting at page 130, is the cross-complaint. Good question. For context of what the ruling refers to, I agree with you. But as proof of what happened, no, that's just an allegation. Are you contesting that that this judgment wasn't directed to the claim of fraud? There's elements in this judgment which is vague regarding fraud, yes. But what fraud? Which of these transactions? But once fraud is found in a state court and there is a judgment that is final, you can't, you're not going to re-litigate that in bankruptcy court. The judgment is locked in. So why do we need to, once it is found for fraud, and that is a final judgment, what purpose is trying to re-examine to the, you know, degree that you want us to, which transaction, which promise, which reliance? At some point in time, if the jury had just come back and said, fraud is found, wouldn't we be bound to grant non-dischargeability as that judgment? No, because if he defrauded Ms. Aquino 20 years ago in a bank, I don't know, you're at your five minutes. I'll dive, I'll take less time at the end, but my last point would be, it is relevant because it could have been a completely different transaction other than the one at issue in this complaint. We don't, wait, how could that happen? How could they have determined damages relative to fraud that were not based on an allegation that was made in the complaint and presented to them through evidence presented at the trial? They didn't just make up a number out of sheer imagination. They were presented with facts. I think that's a fair assumption, but what transaction are we talking about? We don't know. We're presenting all these other transactions that we want the which is why we're asking for remand. Thank you very much. Thank you. Good morning, Your Honors. Moses Bardavid on behalf of Responding Parity, I Thank you, Kelsey. You may proceed. I think in this case what we have is a very clear case of issue preclusion and collateral estoppel and the public policy requirements for this. In essence, what we have here in the appeal raised by the defendant is that there are all these facts and issues that we raised in our opposition to motion for summary judgment that we do not believe the And if those issues were considered, perhaps there would be a separate finding that would be an opposite of the findings already found by the jury in the superior court. But the fact of this matter is, if you look at the cross complaint, the verified answer to the cross complaint filed by the defendant shaming and the original judgment and the amended judgment on the state court matter, all these matters were all adjudicated. How do we know that? Where are the jury instructions? My understanding is that jury instructions are not part of the record. That is correct. Typically, jury instructions are lodged with the court. They're not necessarily part of the record. So we have no jury instructions to know what was actually asked and the claims presented in the instructions given on the elements. We have no transcript and we have a judgment that doesn't really say what judgment the claim is being entered on. I don't know. First of all, that doesn't say that. But to take the first two issues, there are no court reporters in state courts anymore. They don't exist. Court reporters only exist if both sides decide to pay for court reporters for purposes of appeal, and oftentimes that's cost prohibitive. So the vast majority of trials going before the state courts do not have court reporting system like they do in the bankruptcy courts. But if that was really a question, then res judicata and collateral estoppel would not apply to a vast majority of state court actions. The jury instructions are typically lodged. They're part of the book. They're not necessarily part of the record. But the jury instructions on both sides are submitted by the plaintiff's side and the defense side and agreed and approved then by the judge before they go to the defense that are required for findings. And they follow 98% of the time, unless they're special instructions, they follow catchy, which are mandatory instructions by the state of California that must be followed. And all you're doing is filling in the blanks. So the jury instructions are given and these are and then the verdict forms are provided. And this is what we have, a verdict form. And the verdict shows what matters were litigated and what to and the loan is all on the fiduciary duty. I asked the opposing counsel about a two fiduciary duty for, um, what evidence do we have that the that there was a joint venture that the issue that there was a joint venture was actually litigated and necessarily decided. Um, you know, we have California authority that says joint ventures are fiduciaries. But what do we have to support in the record that this was actually litigated and decided that these parties were joint ventures? Well, there's two parts. First, the jury decision says that he was acting as an agent that came in, was acting as an agent for, uh, Miss Aquino in acquiring the property in making the loan and refinancing. Yes. I mean, that's what's not answered. We agent for what purposes? Well, it's for for whom? It says he was. If you look at the judgment at 17. Yes. Amended judgment. Give me a second. And in front of me, there is 17. It's well, but it was. It was Jay Sheehan. It was Mr Sheehan acting as an agent of Laila Aquino. Yes. Did Thomas Sheehan act on Laila Aquino's behalf for purposes of obtaining the $242,000 line of credit? One follows the other, and it's very clear that he was acting in Laila's behalf, whether that's a and that is, in essence, almost the definition of a fiduciary capacity. The only fiduciary capacity for an express trust, the express trust, he admits. If we look at the motion for summary judgment and you his his his deposition transcript, we go over it. I understand what you mean. But what the times you guys were in a relationship, she was your CPA or you guys were at some sort of business together. You trusted her. I did. And she also trusted you. She did. This is hit from his depo. 1 55 13 to 1 55 19. Then the question. Okay, I'm beginning to understand. So to put it like simply, there was this business relationship with you two. You didn't want to exist, but it came into existence. And after the fact, you realized you shouldn't have trusted her, but the opposite was correct. She should have trusted you because you were honest. Answer. Absolutely. And then a little further down and in the same business transaction, she trusted you as well and relied on you. But it was concrete because you when you represented you were reliable and trustee trustworthy. It was all true. Correct. That's correct. Okay. But if she did trust you, was it all well placed counselor? She was able to vet me. Okay, great. And in your opinion, you never acted as an agent in any manner for Layla. Oh, no. I helped her with Iver with a variety of things. I would say I did things for her throughout the years that represent that definition. This was all part of the transcript that was included in the motion for summary judgment to prove that an express trust had created because state court fiduciary duty requirements differ a little than federal courts where we have to prove express trust in the federal courts and in the state courts. It's just assumed when your business partners or agents and it's all there and it's so let me just make sure the argument you're making is they had this business relationship which created an express trust. He was her agent for the purposes of acquiring the property. He was her agent for the purpose of refinancing the property when he refused to turn the proceeds over and breach that promise that that was the equivalent of a breach of fiduciary duty because there was an express trust between them arising out of their business relationship. And because he admitted there was an express trust and it was also defalcation of the company assets. Of the company assets, but that this is a claim that she makes directly for her own benefit, not for the company's benefit. No, but if she's a 50% holder in the company which is admitted throughout and therefore it was agreed that when assets were taken out they were going to be divided. He didn't divide them and he used them for his own purposes. He took company assets and got rid of them using using his fiduciary duty, his relationship of trust with her. So I guess what I'm asking you is are you setting up a scenario that every situation like this where business partners work together and one breaches an agreement with another, creates a breach of fiduciary duty as a tort and then it becomes a non-dischargeable instead of a breach of contract claim which might be dischargeable. It could if a state court finds breach of fiduciary duty. Breach of fiduciary duty is a tort. But where did they find the breach of fiduciary duty here? They just said that he breached the promise and that she relied upon that promise. It's when they are finding the elements of breach of fiduciary duty. Because if we look at the findings as to the 252, there can be a breach of contract claim. But in this case they talk about agency and that is different. There is no, if you look at the 121, it doesn't say was there a contract between, it is a promise and a breach which is necessarily fraud. A promise and a breach is necessarily fraud? Not necessarily. With reliance and with... And an intent to deceive. Yes, yes, yes. Yeah, and on that, did Shaman intend to perform this promise when he made it and the jury said no? And that is the intent to deceive? Yes. Even though deceit was not mentioned in there? Right, well... So there's a reasonable inference there, right? Well, yeah, it's not even an inference, it's straight out. Did he intend to perform the promise? No, that's not intent to deceive, that is a fact. He deceived her. He represented that he was gonna, he represented A and never intended to fulfill it. What's confusing though is if you look at these from 16 to 31 and the findings, they start out with $50,000 and they talk about whether or not they were an agent. Then they talk about what was the purpose of the agency. Then was he careful? No, he wasn't. Was she harmed? Yes. The damages are $120,000. The next series proceeds with questions regarding fraud, deceit, intent, and the damages associated with that are the $50,000. They don't relate to the $121,000. To the $121,000, if I look at it, is when he acted as an agent. Right. And that's the fiduciaries. I mean, when you're talking about agency... So it's not fraud as an agent, it is, in fact, a breach of a promise because you're an agent, then you have the breach of fiduciary duties. That is correct. And there's an express trust form that nobody denies. Nobody denies. And so what we have here is, the matter was litigated. Sure, there's no transcript. We can't expect everybody to have a transcript. The instructions are not part of the record, but the instructions are produced via CACHI. We have a trial. We have a four-day trial. All the defenses that the defense could have raised, that Mr. Shaman could have raised, that he wants to raise for this MSJ, should have been raised there. He testified. And then there was time to file an appeal. If there was a question about the verdict, if there was any issue about the verdict, he could have appealed the verdict to the state court and said, hey, some elements are missing, there's not clarity. But no, what he's doing is saying, okay, we're going to try the whole matter, we're going to have a judgment, we're going to fail to appeal, and then when it's gone to the bankruptcy court to pretty much stamp what happened before, oh no, now we have to retry the whole thing. We can have completely inopposite results. And that's the issue here. If not, it just opens up every finding of fraud, every finding. Now we're going to have to have state court attorneys thinking about what a bankruptcy court might think in the jury instructions, and then on top of it- That's going to happen anyway. I mean, the problem is you have to show the elements of issue preclusion. So we're looking at that. So I assume the state court litigators should be thinking about that in this situation. That's the problem. And that's what Judge Tive was struggling with. Yeah. Well, she struggled with it only at the beginning when it wasn't a motion for summary judgment, but a motion to dismiss. But when I brought the motion for summary judgment and I laid it out step by step, then there was no struggle. There was a pretty clear finding of summary judgment. So I can't expect Judge Tive, during a motion to dismiss, to consider whether all the elements fit for motion for summary judgment. What I can tell you, she didn't grant the motion to dismiss. She said, no, this is definitely enough to go forward. And when the motion for summary judgment came about, there was testimony taken, there was argument made, and Judge Tive made what seemed to me to be a basic decision based upon the facts in this case. The court has any other questions? Any other questions? Thank you very much, Counsel. Thank you. Counsel, reply. We've got about a little over three minutes left. I understand that there's no jury instructions and it's expensive to hire a court reporter. But why no exhibits? Why didn't Ms. Aquino, assuming she attended the trial, testify in the summary judgment motion about what happened at the trial? For issue of preclusion, though, we're not arguing that we need to go back or that the trial court needed to go back and retry this. I mean, what we have to look at was, was it actually litigated and was it necessarily decided? And whether they got it wrong at the trial court, well, that's not before us. That should have been appealed or whatever. What we have here is that we do have judgment. You know, we do have a judgment. There was issues decided, but we don't know what issues were decided. I think what plaintiff is afraid of is the holistic facts of the professional relationship between the plaintiff and defendant coming to light. And I'll, you know, direct the court again to excerpt of record, our opposition to summary judgment and supporting declaration starting at page 560, excerpts of record 26. Also, Judge Teig's standard of for the summary judgment motion at excerpts of record 31, page 1496. Summary judgment should be granted if the pleadings, depositions, answers to interrogatories and admissions on file together with affidavits show there's no genuine issue as to any entitlement to judgment as a matter of law. Well, if that's true, why does she keep, respectfully, why does she use the Exhibit C cross complaint as truth in her decision? If you look at excerpts of records starting at number 31, starting at page 1498, she missed it. And I think this needs to be remanded so that the court can actually understand what really happened. Where was the fraud, if any, between these two parties? Because there was a lot of transactions, as Mr Shaman testified to in his opposition, and we don't know what the state court considered. We really don't. Let me ask you, before you conclude, opposing counsel indicated that nobody denies there was an expressed trust. Is that accurate? Well, you have his testimony in his deposition that counsel read to you, but it's very vague. He said, Yeah, we had a trust, and then he said, She trusted me. I trusted her. But on which transactions are we talking about? I want the court to understand, and I hope you read through all of the different transactions, which are supported by actual documents attached to Mr Shaman's declarations, that these two entered into over the years. It's a lot. It's a lot. Thank you. Thank you. No. Thank you very much. The matter will be deemed submitted. Thank you for your argument.
judges: Spraker, Gan, and Corbit